UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RACHAEL JOYCE MCINTYRE,
                  Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                  Defendant.

Civ. No. 17-2176 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

Ms. McIntyre brings this action pursuant to 45 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and Supplemental Security Income ("SSI"), 42 U.S.C. § 1381. For the reasons set forth below, the thorough and conscientious decision of Administrative Law Judge ("ALJ") Jennifer Spector is affirmed.

## I. BACKGROUND[1]

Ms. McIntyre seeks to reverse a decision that she did not meet the Social Security Act's definition of disability. Ms. McIntyre originally applied for DIB and SSI on April 15 and 16, 2013. The claim was denied initially on July 26, 2013, and upon reconsideration on October 25, 2013. (R. 13).

---

[1] Citations to the record are abbreviated as follows:
"R." = Administrative Record (DE 7)
"Pl. Br." = Brief in Support of Plaintiff McIntyre (DE 15)
"SSA Br." = SSA Secretary's responding brief (DE 16)

1

A hearing was held before an ALJ on June 10, 2015. (Transcript at R. 55-127). The claimant, who was represented by counsel, testified; the ALJ also took testimony from a vocational expert ("VE"). On July 30, 2015, the ALJ rendered a decision denying benefits. (R. 10-54) On January 31, 2017, the Appeals Council denied Ms. McIntyre's request for review of the ALJ's decision, rendering it the final decision of the Commissioner. (R. 1)

Ms. McIntyre appealed to this Court, asserting that the ALJ erred in finding that she was not disabled from an onset date of April 22, 2002, through the date of the ALJ's decision. The case was transferred, most recently to a Magistrate Judge on September 28, 2018. It was informally transferred to me for decision on November 2, 2018, and formally transferred November 8, 2018. (DE 18).

## II. DISCUSSION

To qualify for DIB or Supplemental Security Income, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

2

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607,

610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

## B. The ALJ's Decision

ALJ Jennifer Spector followed the five-step process in determining that Ms. McIntyre was not disabled from January 1, 2011 through March 31, 2013 (the date last insured). Her findings may be summarized as follows:

**Step One:** At step one, Judge Spector determined that Ms. McIntyre had not engaged in substantial gainful activity since April 22, 2002, the amended onset date, in that her small amounts of income did not meet the threshold. (R. 15).

**Step Two:** At step two, the ALJ determined that Ms. McIntyre had the following severe impairments: right elbow lateral epicondylitis, partial anterior cruciate ligament ("ACL") tear, arthritis of the thumb, herniated nucleus pulposus of the lumbar spine and lumbar facet syndrome, obesity, bipolar disorder, generalized anxiety disorder, obsessive compulsive disorder, post-traumatic stress disorder (""PTSD"), and panic disorder without agoraphobia. (R. 16). The ALJ found that the following claimed impairments were not sever: sinusitis, inguinal pain-folliculitis, plantar fasciitis, asthma, status post anthrax poisoning, and cervical strain. As to these, the ALJ thoroughly reviewed the medical evidence. (R. 16–19)

**Step Three:** At step three, the ALJ found that Ms. McIntyre did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. As to musculoskeletal impairments, the ALJ made particular reference to Listings 1.02[2] and 1.04.[3] As to mental impairments, the ALJ cited Listings

---

[2] **1.02 *Major dysfunction of a joint(s) (due to any cause)*:** Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

OR

5

12.04[4] and 12.06.[5] She exhaustively reviewed the evidence as to each of the "paragraph B" and "paragraph C" criteria. (R. 19–23).

---

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

[3]   **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[4]   **12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A and B, or A and C:**

A. Medical documentation of the requirements of paragraph 1 or 2:

1. Depressive disorder, characterized by <u>five</u> or more of the following:

a. Depressed mood;

b. Diminished interest in almost all activities;

c. Appetite disturbance with change in weight;

d. Sleep disturbance;

e. Observable psychomotor agitation or retardation;

f. Decreased energy;

g. Feelings of guilt or worthlessness;

h. Difficulty concentrating or thinking; or

i. Thoughts of death or suicide.

6

2. Bipolar disorder, characterized by <u>three</u> or more of the following:
a. Pressured speech;
b. Flight of ideas;
c. Inflated self-esteem;
d. Decreased need for sleep;
e. Distractibility;
f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
g. Increase in goal-directed activity or psychomotor agitation.

  AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

  OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); <u>and</u>
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

### [5] 12.06 Anxiety and obsessive-compulsive disorders (see 12.00B5), satisfied by A and B, or A and C:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:
1. Anxiety disorder, characterized by <u>three</u> or more of the following;
a. Restlessness;
b. Easily fatigued;
c. Difficulty concentrating;
d. Irritability;
e. Muscle tension; or

7

**Step Four:** At step four, the ALJ appropriately made a more detailed assessment of the evidence considered at steps two and three for the purpose of assessing the claimant's residual functional capacity ("RFC"):

> ... I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can walk, stand or sit up to six hours a day but no more than two hours at a time, and then would need to shift positions for 4 to 5 minutes while remaining on task, can

---

f. Sleep disturbance.

2. Panic disorder or agoraphobia, characterized by <u>one</u> or both:

a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or

b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

3. Obsessive-compulsive disorder, characterized by <u>one</u> or both:

a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or

b. Repetitive behaviors aimed at reducing anxiety.

     AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

     OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); <u>and</u>

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

8

never climb ladders, ropes or scaffolds or work around unprotected
heights or dangerous moving machinery, can frequently climb
ramps or stairs, and can frequently operate foot controls, crouch or
crawl and also can understand, remember and carry out simple
instructions and can make only simple work related decisions.

(R. 23)

The ALJ, in considering the claimed symptoms, properly followed the two-step process of determining whether they bore a reasonable relation to an underlying impairment, and then determining whether the claimed intensity of the symptoms is credible in light of the evidence.[6] Judge Spector found that Ms. McIntyre's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 25) These conclusions were accompanied by a thorough review of the evidence. (R. 24–48)

**Step Five:** Finally, the ALJ determined that given Ms. McIntyre's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. (R. 48) Based on the VE's testimony, she identified the following: office helper (DOT code 239.567-010-83,000 jobs in the national economy; office cleaner (night) (DOT code 323.687-014)-878,000 jobs in the national economy; and mail clerk (DOT code 209.687-026)-116,000 jobs in the national economy.

Therefore, Judge Spector concluded that Ms. McIntyre had not been under a disability from April 22, 2002 through the date of her decision. (R. 49).

---

[6] More formally: First, the ALJ is to determine whether there is a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent they limit Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1529(c)(2). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms..." 20 C.F.R. § 404.1529(c)(2). Other relevant information includes what may precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 404.1529(c)(3).

## C. Analysis of Ms. McIntyre's Appeal

Ms. McIntyre challenges the ALJ's decision on four grounds. First, she says, the ALJ "gave insufficient weight to testimony, both of McIntyre and her close friend, concerning the numbness in her extremities . . . and her pain." Second, "[t]he ALJ likewise failed to give sufficient weight to McIntyre's subjective testimony concerning her emotional conditions, including her feelings of depression [and] her difficulty sleeping." (Pl. Br. 7, citing R. 75, 91–92). Third, the ALJ failed to "properly consider the combined effect of the McIntyre's myriad ailments on her ability to perform light work . . . . at step five of the sequential analysis." (Pl. Br. 7) Fourth, the ALJ failed to assign controlling weight to the opinions of Ms. McIntyre's treating professionals. (Pl. Br. 9)

### 1. Grounds 1 & 2: Subjective complaints

The first two grounds—pertaining to complaints of numbness, pain, depression, and sleeplessness—are interrelated, and I discuss them together.

Subjective complaints of pain and other symptoms must of course be considered, but they are not necessarily controlling. As noted above, the ALJ must—and here, did—make a determination as to whether such complaints are credible in light of established medically determinable impairments and in the context of all the evidence of record. *See* n. 6, *supra*; *Hartranft v. Apfel*, 181 F.3d 358, 363 (3d Cir. 1999). The ALJ must consider the extent to which the reported symptoms can "reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's subjective complaints are unsupported by the evidence, the ALJ may discount them. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

What is required is that the ALJ give the claimant's testimony "serious consideration," state her reasons for accepting or discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where, as here, that has been done, the ALJ's credibility determinations are entitled to "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x

183, 188-89 (3d Cir. 2007) (citing *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)). Indeed, it has been said that "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)).

The ALJ here found that although the medically determinable impairments could reasonably be expected to produce such symptoms, the claimant's complaints about the severity of the symptoms were not wholly credible. (R. 25) That finding was supported by substantial evidence. To be sure, there was evidence of numbness, pain, depression, and sleeplessness. It must be remembered, however, that to be fit for work, a claimant need not be pain-free or symptom-free. *See Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986). To a great degree, the ALJ accepted the evidence of underlying medical conditions and associated symptoms. What was lacking was corroboration of the claim that those symptoms were disabling.

In so finding, the ALJ carefully weighed the evidence, including the subjective testimony. (R. 23–41). I will not repeat that analysis here, but I will summarize enough of it to establish that there was substantial evidence in support of the ALJ's conclusions. Ms. McIntyre's treatment, including medication and injections, relieved her pain sufficiently enough for her to resume such activities as bowling; surgery and additional injections ameliorated her elbow pain; her thumb pain improved with medication and injections; and arthritis and bursitis in Plaintiff's right knee improved with medication, injections and physical therapy, although she complained of pain while running (R. 39-41). Similarly, the ALJ explained that symptoms related to mental impairments responded to some degree to medication and therapy; at any rate clinical observations did not support a conclusion that they were disabling. (R. 34-38). By April 2015, Ms. Schruntek opined that Plaintiff exhibited a euthymic mood, an appropriate affect, and good memory and attention (R. 38). State agency experts, Drs. Trachtenberg, Golish, and Turhan, reviewed the medical records, and found that the claimant could perform a

range of light work with some additional limitations (R. 133-34, 137-39, 164, 167-69).

That medical evidence provided a sufficient basis for the ALJ's conclusion that Plaintiff's testimony as to her subjective symptoms was only partially credible.

### 2. Impairments in combination

I make short work of the third asserted ground—*i.e.*, that the ALJ failed to consider the effect of Ms. McIntyre's impairments in combination. To begin with, I have rarely seen in an ALJ opinion such an exhaustive recital and discussion of all the evidence of all claimed impairments. The ALJ, moreover, was obviously well aware of the requirement that she consider impairments in combination, as well as individually. Her opinion states, for example, a finding that the claimant "did not have an impairment or combination of impairments that meets or medically equals" the listings, and repeats that she considered them "singly and in combination." (R. 19) From the context, it is readily apparent that the RFC reflects limitations that draw on multiple impairments. For example, it incorporates physical limitations on standing or climbing, as well as mental limitations on carrying out instructions or making decisions. (R. 23) And that composite RFC is of course the foundation of the step 5 finding as to particular jobs in the national economy that the claimant could perform. "[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so." *Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) (quoting *Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)).

There is every indication that the ALJ considered the impairments in combination, as required.

### 3. Ground 4: Opinions of treating professionals

Ms. McIntyre contends that the ALJ erred in failing to give controlling weight to the opinions of three professionals who treated her: Marcy Roshelli,

APRN; Christine Schruntek, APN; and Dr. Francis Merlo, D.O.[7] As her counsel sees it, the ALJ discounted this testimony based solely on doubts as to the credibility of the claimant's testimony, duplicating the error found in *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000). That claim does not survive even the most cursory reading of the ALJ's opinion.

A treating physician's opinion "does not bind the ALJ," *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011), but the ALJ must demonstrate that he or she has considered it and explain why it was or was not given weight. The ALJ may reject a medical opinion where it is not supported by the clinical evidence, is internally inconsistent, or is not consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In general, a treating physician's opinion carries greater weight than that of a one-time consultant, especially one who has not examined the patient. Still, the ALJ retains discretion: "[I]f the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Under those standards, I must conclude that Judge Spector properly treated the opinions of these three treating professionals.

I discuss the two nurses first.

The ALJ's opinion carefully summarizes the evidence of some half dozen clinical sessions with Nurse Roshelli in 2012–13. (R. 34–35) Ms. McIntyre complained of depression, anxiety, sleep disturbances, poor focus, and PTSD following exposure to anthrax. She was treated at various times with Lamictal, Vistaril, Celexa, and Wellbutrin, but discontinued Lamictal on her own because of weight gain. She responded positively, and indicated on April 12, 2013 that she felt better.

The ALJ also summarized periodic sessions with Nurse Schruntek from May 2013 to June 2015. (R. 35–38) The immediate complaints were nausea,

---

[7] "APN" stands for advanced practice nurse, and "APRN" stands for advanced practice registered nurse. Both designations signify completion of post-graduate training. A "D.O." is an osteopathic physician.

fatigue and other side effects of medication from Cymbalta. Nurse Schruntek found the claimant to be "in fast spirits and her affect was full range. Her memory was intact and she was pleasant and cooperative. Ms. Schuntek assessed the claimant with a GAF score of 60." (R. 36) Her mood was observed to range from fair to euthymic (*i.e.*, normal and tranquil), with reported and anxiety and stress at times, but all in all, her "presentations during the period at issue reflect no more than moderate limitations," consistent with her GAF scores of 59 to 65. (R. 44) The main agenda throughout appears to have been adjustment of medication, with "mixed results." (R. 43)

Nurse Roshelli limited the claimant's work activities on January 17, 2012, and on April 12, 2013, "concluded that the claimant was unable to work due to ongoing symptoms from her PTSD and was permanently disabled." (R. 44–45) Nurse Schruntek, too, "concluded that the claimant was unable to work due to ongoing symptoms from her PTSD and was permanently disabled." (R. 47)

The ALJ gave little weight to Nurse Roshelli's conclusory opinion of disability for several reasons. First, as a non-physician APN, Roshelli was not an "acceptable medical source (20 CFR 404.1513(d) and 416.913(d))." (R. 46) Citing SSR 06-03p, the ALJ nevertheless considered the relevant factors to determine whether Roshelli's opinion outweighed acceptable medical source opinions.[8] Judge Spector noted that the opinion of disability was inconsistent

---

8     Those SSR 06-03p factors, quoted by the ALJ, are:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's
- impairment(s), and
- Any other factors that tend to support or refute the opinion.

14

with Nurse Roshelli's examination notes and GAF scores,[9] which pointed to a moderate impairment (anxiety, sleep disturbances, and the like). Further, Ms. McIntyre earned income from work related activities in the 2012–13 period during which Nurse Roshelli had found her unable to work. (R. 46) Schruntek failed to explain or account for these seeming inconsistencies. For these reasons, ALJ Spector discounted Roshelli's opinion.

For similar reasons, the ALJ gave little weight to Nurse Schruntek's opinion of disability. As an APN, Schruntek was not an acceptable medical source. 20 CFR 404.1513(d) and 416.913(d))." (R. 46) Citing SSR 06-03p, the ALJ nevertheless considered the relevant factors to determine whether Schruntek's opinion outweighed acceptable medical source opinions. *See* n.8, *supra*. The ALJ gave little weight to Nurse Schruntek's conclusory opinion of disability for several reasons. Schruntek's clinical findings indicated moderate impairment, as did the GAF scores, both of which were inconsistent with a finding of disability. Earnings records showed income from work related activities during the ostensible period of disability. Schruntek failed to explain or account for these seeming inconsistencies. For these reasons, ALJ Spector discounted Nurse Schruntek's opinion.

I turn to the ALJ's discussion of the opinion of a treating physician, Dr. Francis Merlo, D.O. Dr. Merlo prescribed Xanax, increasing the dosage on July 26, 2013, based on PTSD. (R. 36) Dr. Merlo concluded on July 26, 2013, that the claimant was unable to work because of PTSD triggered by an anthrax attack in 2001[10] and from anoxic brain injury sustained by her husband during surgery in 2003. (R. 46)

The ALJ gave "little weight to Dr. Merlo's opinion." His conclusions, she found, were inconsistent with the rest of the record. Moreover, Dr. Merlo is an

---

[9] The ALJ noted that GAF scores are primarily an overall diagnostic tool, not a rigorous metric of disability. Nevertheless, she gave them weight because they had been consistent over time and because they confirmed other evidence of no more than moderate limitations in mental functioning.

[10] The ALJ's opinion relates elsewhere that the claimant was exposed to anthrax in 2002. Apparently there were no long-lasting physical effects. (R. 18)

15

internist, with no specialized expertise in psychology. His findings largely rested on the claimant's subjective complaints. And his conclusory opinion of disability would not necessarily correlate to the SSA's administrative definition. (R. 46–47) These were acceptable reasons for giving comparatively less weight to the opinion of Dr. Merlo.

I add, moreover, that the three medical opinions identified by the claimant here go against much of the other medical evidence. *See supra.* The ALJ, who gave cogent reasons for doing so, was entitled to give greater weight to that other evidence and to discount the opinions of Roshelli, Schruntek, and Merlo, despite their "treating" status.

## CONCLUSION

The ALJ appropriately weighed the evidence, giving some credence to subjective complaints, discounting certain complaints in light of the objective medical evidence, crediting some medical opinions, and discounting others, always articulating her reasons for doing so. In that manner, the ALJ arrived at a balanced assessment of the claimant's RFC and found that she could perform light work with certain limitations. Because that assessment was supported by substantial evidence of record, it must be upheld.

The ALJ's decision is affirmed. An appropriate order accompanies this opinion.

Dated: November 13, 2018

KEVIN MCNULTY
United States District Judge